NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

RAYMOND L. MATA, *Appellant.*

No. 1 CA-CR 13-0545

FILED 08-12-2014

---

Appeal from the Superior Court in Maricopa County
No.  CR2011-148216-001
The Honorable Roger E. Brodman, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Cory Engle
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maurice Portley and Judge Andrew W. Gould joined.

**W I N T H R O P**, Presiding Judge:

**¶1**         Raymond L. Mata ("Appellant") appeals his convictions and sentences for two counts each of armed robbery, kidnapping, and aggravated assault, and one count of theft of means of transportation. Appellant's counsel has filed a brief in accordance with *Smith v. Robbins*, 528 U.S. 259 (2000); *Anders v. California*, 386 U.S. 738 (1967); and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), stating that she has searched the record on appeal and found no arguable question of law that is not frivolous. We therefore review the record for fundamental, reversible error. *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30, 2 P.3d 89, 96 (App. 1999). Although, this court allowed Appellant to file a supplemental brief *in propria persona*, he has not done so.

**¶2**         We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (West 2014),[1] 13-4031, and 13-4033(A). Finding no reversible error, we affirm.

## I. FACTS AND PROCEDURAL HISTORY[2]

**¶3**         On September 23, 2011, a grand jury issued an indictment, charging Appellant with Counts I and II, armed robbery, class two dangerous felonies, in violation of A.R.S. § 13-1904; Count III, kidnapping, a class two dangerous felony, in violation of A.R.S. § 13-1304; Count IV, kidnapping, a class two dangerous felony and a dangerous crime against children, in violation of A.R.S. §§ 13-1304 and 13-705; Count V, aggravated

---

[1]      We cite the current Westlaw version of the applicable statutes because no revisions material to this decision have since occurred.

[2]      We view the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Appellant. *See State v. Kiper*, 181 Ariz. 62, 64, 887 P.2d 592, 594 (App. 1994).

assault, a class three dangerous felony, in violation of A.R.S. § 13-1204; Count VI, aggravated assault, a class two dangerous felony and a dangerous crime against children, in violation of A.R.S. §§ 13-1204 and 13-705; and Count VII, theft of means of transportation, a class three felony, in violation of A.R.S. § 13-1814. The State further alleged that Appellant had two historical prior felony convictions. The State also alleged that Appellant committed his most current offenses while released from confinement, and that multiple aggravating circumstances existed.

¶4 At Appellant's second trial,[3] the State presented the following evidence: Sometime between 5:30 a.m. and 5:45 a.m. on July 28, 2011, B.P. was in her car with her five-year-old son, V.P., waiting outside her husband's work for him to come get his forgotten cigarettes. While waiting, B.P. observed another car drive up rapidly behind her. A male (later identified as Appellant) exited the car while wielding a handgun. He approached her car on the passenger's side. Appellant pointed the gun at B.P. and ordered her to open the car door. B.P. complied. Appellant entered the back seat of B.P.'s car and sat next to V.P.[4] Appellant instructed B.P. "[t]o drive, and to not look back." B.P. followed Appellant's instructions and drove the car for a few miles until Appellant told her to "get out." B.P. and V.P. exited B.P.'s vehicle.

¶5 The car that dropped Appellant off had followed behind B.P.'s car to where B.P. stopped and exited with V.P. A male wearing sunglasses and a bandana covering the lower portion of his face exited that car and stood beside B.P. and V.P. B.P. and V.P. were instructed by Appellant to "walk[] towards the front [of the car]." B.P. and V.P. began walking. B.P. ultimately flagged down a motorist, who stopped and took B.P. to her husband's work place, where she called the police. Phoenix Police Officer Baiardi responded and interviewed B.P.

¶6 Later, on August 18, 2011, Chandler Police Detective Duncan responded to a call regarding a stolen car. The car in question was determined to belong to B.P. The car was in the possession of an individual known for possessing stolen vehicles, Gerardo Renteria, who eluded police on this particular occasion. Detective Duncan questioned Renteria's wife,

---

[3] Appellant's first trial was declared a mistrial, due to juror misconduct.

[4] B.P.'s car was a late 1990s four-door sedan; Appellant entered the backseat directly behind the unoccupied front passenger's seat. V.P. was seated directly behind B.P.

Rosario Sanchez, who claimed she and Renteria had purchased the car without a title from another individual. Detective Duncan prepared photo lineups, which included Renteria and the individual identified by Sanchez, and presented the lineups to B.P., who did not recognize either suspect. While B.P. was reviewing the lineups, Detective Duncan discovered V.P. had previously unreported information about the armed robbery.

¶7        A forensic interview of V.P. yielded a more detailed description of the armed carjacking suspect who had taken B.P.'s vehicle. V.P. described the suspect as an Hispanic male with a large tattoo of either "a cross or an X" on the back of his head. V.P. later testified at trial he witnessed large tattoos of what appeared to be an X, followed by the numerals five and seven, on Appellant's head during the armed robbery.[5]

¶8        Approximately two weeks later, on September 13, 2011, Detective Duncan received an e-mail from B.P., who indicated she had additional information about the armed robbery. B.P. had been contacted by a man claiming to have found numerous documents belonging to B.P. that had been in B.P.'s purse, which was left in the vehicle when it was taken during the armed robbery. The man had found the documents inside the home of Appellant's sister after she had kicked her two brothers, including Appellant, out of the house. The man returned the documents to B.P. at her home and informed her that he found them inside the home of a friend. He also provided B.P. with Appellant's name at that time. Detective Duncan and Phoenix Police Detective Dominguez each contacted the man, who also gave them Appellant's name.

¶9        Detective Dominguez prepared a photo lineup that included a known photograph of Appellant for B.P. to review. Detective Dominguez observed B.P. tremble, slip from her seat, and tear up upon viewing the lineup. B.P. then positively identified Appellant as the male who entered her car with a handgun. Appellant was arrested later that afternoon.

¶10        The jury found Appellant guilty as charged on all seven counts. The jury also found that counts I-VI were dangerous and found each of the numerous aggravating circumstances alleged by the State had been proven beyond a reasonable doubt. At sentencing, the trial court found Appellant had one historical prior felony conviction for sentencing purposes, and he was on parole during the time of his most current offenses. The trial court sentenced Appellant to concurrent, aggravated

---

[5]        Appellant has large tattoos on the back of his head reading "X53." Viewed from the back and left of Appellant, the "3" looks much like a "7."

terms of 17 years' incarceration in the Arizona Department of Corrections each for Counts I, II, and III, 12 years' for Count V, and 10 years' for Count VII; a consecutive, presumptive term of 17 years' for Count IV, and a consecutive, minimum term of 10 years' for Count VI, with credit for 666 days of presentence incarceration for Counts I, II, III, V, and VII. Counts I-VI were flat-time sentences. Appellant filed a timely notice of appeal.

## II. ANALYSIS

¶11        We have reviewed the entire record for reversible error and find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881; *Clark*, 196 Ariz. at 537, ¶ 30, 2 P.3d at 96. The evidence presented at trial was substantial and supports the verdicts, and the sentences were within the statutory limits. Appellant was represented by counsel at all stages of the proceedings and was given the opportunity to speak at sentencing. The proceedings were conducted in compliance with his constitutional and statutory rights and the Arizona Rules of Criminal Procedure.

¶12        After filing of this decision, defense counsel's obligations pertaining to Appellant's representation in this appeal have ended. Counsel need do no more than inform Appellant of the status of the appeal and of his future options, unless counsel's review reveals an issue appropriate for petition for review to the Arizona Supreme Court. *See State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Appellant has thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.

## III. CONCLUSION

¶13        Appellant's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: gsh